DUNLOP *v.* MUNROE.

March 9th.

*Present.....All the Judges.*

When the issue is taken upon the neglect of the post-master himself, it is not competent to give in evidence the neglect of his assistant.
When it is intended to charge a post-master for the negligence of his assistants, the pleadings must be made up according to the case; and his liability then will only result from his own neglect in not properly superintending the discharge of their duties in his office.
In order to make a post-master liable for negligence, it must appear that the loss or injury sustained by the Plaintiff was the consequence of the negligence.
Parol evidence cannot be given that one set of written instructions from the post-master general, superseded another set of written instructions.

ERROR to the Circuit Court for the district of Columbia, sitting at Washington, in an action wherein James and John Dunlop were Plaintiffs, and Thomas Munroe, the deputy post-master at Washington, was Defendant.

The declaration after having been several times amended, contained *nine* counts.

1. The first count was as follows—Thomas Munroe, late of Washington county, gentleman, was attached to answer unto James Dunlop and John Dunlop in a plea of trespass on the case, &c. whereupon the said James and John, by Francis S. Key, their attorney complain, that whereas, by the laws of the United States of America, relative to the post-office establishment of the United States, and of the post-roads within the United States, it was enacted, that there should be established, at the seat of the government of the United States, a general post-office, under the direction of a post-master general, and that post-offices should be established; and that post-masters should be appointed by the said post-master general, at all such places as should appear to him expedient, on the post-roads which then were, or might thereafter be established, and the carriage of the mail on all such post-roads provided for; and that every post-master, so appointed by the said post-master general, should keep an office, in which one or more persons should attend for the purpose of performing the duties thereof; and a post-road was directed to be established from Passamaquaddy, in the district of Maine, to St. Mary's, in Georgia, within the said United States; and the city of Philadelphia, in the State of Pennsylvania, and the city of Washington, in the district of Columbia, and the town of Petersburg, in the state of Virginia, were places through which the said post-road was directed by law to pass. And whereas in pursuance of the said laws, a general post-office was established at the seat of government of the United States, under the

direction of a post-master general, duly appointed and qualified, and a post-road established within the U. States from Passamaquaddy, in the district of Maine aforesaid, to St. Mary's, in Georgia aforesaid ; and the said city of Philadelphia, and the said city of Washington, and the said town of Petersburgh, were places through which the said road did pass, and post-offices were duly established at the said places, so as aforesaid on the said post-road, by the said post-master general; and post-masters by him duly appointed and qualified to attend to the duties of the said post-offices, and the carriage of the mail of the U. States on the said post-road provided for by the said post-master general agreeably to law : and the said Thomas Munroe was, by the said post-master general, duly appointed and qualified the post-master at the said office, so as aforesaid established at the said city of Washington on the said post-road, and between the city of Philadelphia and the town of Petersburgh aforesaid, also on the said post-road, and as such was bound to attend to and perform all the duties thereof, and to receive, make up, and distribute and forward the mails of the said United States, and all the letters and packets contained therein which should arrive or come to his said post-office so by him kept as aforesaid at the said city of Washington, to all such places on the said post road to which the same were directed and addressed ; and the said Thomas so being, as aforesaid, postmaster at the said post-office, so as aforesaid lawfully established at the said city of Washington, on the post-road so as aforesaid also lawfully established, and post-offices being, also, in like manner, lawfully established at the said city of Philadelphia, and the said town of Petersburgh, on the said post road, and post-masters duly appointed and qualified, and attending to the duties of the said post-offices, on the *thirtieth day of July*, in the year *eighteen hundred and six, the said James and John* being possessed of a large *sum of money*, to wit: the sum of two thousand dollars current money of the United States of their own proper money, and being so possessed thereof, on the same day and year, did enclose *the same in bank notes* by means of their agents in that particular, (a certain Walker and Kennedy) *in a* letter sealed, and directed to the said James and John at Petersburgh, in Virginia aforesaid, on the post-road aforesaid, and the said sum of money, so sealed and en-

DUNLOP
*v.*
MUNROE.

closed in said letter so directed, did place in the post-office in the said city of Philadelphia, so as aforesaid established on the said post-road, to be forwarded on the said post road, in the mail of the United States to the said town of Petersbugh on the post-road aforesaid, and the said letter, directed as foreasid, and the money in bank notes as aforesaid, to the said amount, enclosed in the same, were accordingly, by the said post-master at Philadelphia, and from the office there established as aforesaid on the said post road, sent on and forwarded in the mail of the U. States, on the day and year aforesaid; and did afterwards, to wit: on the first day of August, in the year aforesaid, arrive at the post-office of the said Thomas, postmaster, as aforesaid, in the said city of Washington, on the said post-road, in the mail of the United States, on the route to the post-office at Petersburgh aforesaid, on the post-road aforesaid, and was, on the day and year last mentioned, at the county of Washington aforesaid, *received by the said Thomas to be by him sent on and forwarded* in the mail of the United States, on the said post-road, to the said James and John, at Petersburgh, to whom the same was directed and addressed; *yet the said Thomas,* regardless of his said duty as postmaster, and wholly neglecting the same, *did not send on the said letter,* and the sum of money contained and enclosed in the same, to the said town of Petersbugh, on the said post-road, in the mail of the United States, to the said James and John to whom the same was directed, *as it was his duty to do;* but the same letter and the said sum of money therein contained as aforesaid, *were fraudulently and improperly secreted, withheld,* and *taken,* in the said post-office, at the city of Washington aforesaid, by the said Thomas, *or some other person employed by him,* in his said office, so that the said James and John were prevented from receiving the same, *and the same letter, and sum of money, have been wholly lost* to the said Plaintiffs.

2. The 2d count was like the first in every particular, except that it states that the Plaintiffs placed the letter, enclosing the money in the post-office at Philadelphia, *to be forwarded "without delaying the same a single post"* and that it was received by the Defendant at his office in Washington on the 1st of August, 1806, to be by him sent on and forwarded, *without delaying the same a sin-*

*gle post,* in the mail of the United States, &c. " yet the " said Thomas, regardless of his said duty as post-mas- " ter, and wholly neglecting the same, did not, *on the* *first day of August in the year aforesaid,* send on the " said letter and the sum of money contained and inclos- " ed in the same, to the town of Petersburgh on the said " post-road, in the mail of the United States, *which left* *the city of Washington on the said first day of August, in* *the year aforesaid,* for Petersburgh aforesaid, *as it was* *his duty and in his power to have done;* but the *same* *letter, and the said sum of money therein contained as* *aforesaid, were by the negligence, carelessness, and mis-* *conduct of the said Thomas, in his said office aforesaid,* *utterly, afterwards to them, the said James and John,* *lost;* by reason whereof the said James and John, the " sum of money so as aforesaid, contained and enclosed " in the said letter directed and addressed as aforesaid, " and the use and possession of the same, have entirely " lost; to the great damage," &c.

3. The 3d count was like the first in every respect, except that instead of averring that the Plaintiffs were possessed of a large sum of money, it avers that they were possessed of *"certain property* of great value, to " wit: *of certain bank notes for the payment of money* to " the amount of the value of two thousand dollars, cur- " rent money of the United States, as their own *property,* " and enclosed the same *bank notes,*" &c. using the words *" bank notes,"* in lieu of the words *" sum of money"* in the residue of the count. It contains also an aver- ment of a demand and refusal of the Defendant to deli- ver the letter and bank notes, *whereby* the same have been totally lost to the Plaintiffs, whereof the Defendant had notice.

4. The 4th count was like the first, except that it uses the terms " bank notes," instead of " *sum of money* " *in bank notes;*" and instead of averring, that the let- ter and sum of money were *" fraudulently and improper-* " *ly secreted, withheld and taken, in the said post-office,*" it avers that " the same letter and bank notes were, by " the *negligence, carelessness, and misconduct of the said* " *Thomas in his said office,* lost," &c.—and avers a de- mand and refusal to deliver them, whereby they have been totally lost to the Plaintiffs, whereof the Defendant had notice, &c.

DUNLOP
*v.*
MUNROE.

5. The 5th count varied from the others considerably in the recital, respecting the establishment of post-roads and post-offices ; but the principal difference consisted in an averment, that the post-masters, appointed by the post-master general, were to perform their duties according to law, " *and to the instructions of the post-mas-* " *ter general relative to their duty.*" That the post-office at Washington was a *distributing* office, and that it was the duty of the Defendant, according to the instructions of the post-master general then in force, to open the mail addressed " *Southern,*" and to *distribute* and *re-mail* the letters and packets into proper mails before the departure of the mail ; and on no account to *delay them a single post,* by which it was in his power to send them in the regular course of the mail. It then avers, that the letter and post-notes were put into the post-office at Philadelphia on the 30th of July, and were from thence forwarded in the mail on the 31st, and arrived at Washington on the 1st of August, and were in the usual manner delivered and placed in the post-office at Washington, kept by the Defendant, to be, by him, re-mailed, and sent on and forwarded in the mail of the U. S. to Petersburgh, to the Plaintiffs ; and were delivered and placed in the usual and regular course of the mail at and in the post-office at Washington aforesaid, " *in time to be* " *re-mailed and sent* on, according to the instruction and " direction aforesaid of the post-master general afore- " said, in the same day of the arrival aforesaid, and by " the same mail which thereafter, and on the same day, " departed from the post-office aforesaid, in the city of " Washington aforesaid, with letters for the town of " Petersburg aforesaid ; by virtue of which premises *it* " *was the duty* of the Defendant on the said 1st day of " August, in the year 1806, at," &c. " to have distribut- " ed, re-mailed, and sent on, or caused to have been dis- " tributed," &c. " the said letter, containing the said " bank notes, to the town of Petersburg aforesaid, in " the mail of the U. S. aforesaid, on the same 1st day of " August, in the year aforesaid, which it was in the " power of the Defendant to have done in the usual and " regular course of the business of his said office ; *never-* " *theless,* the said Defendant, on the 1st day of August, " in the year aforesaid, at the county aforesaid, regard- " less of his duty as post-master as aforesaid, did not " send on or forward, or cause to be sent on or fort

DUNLOP
*v.*
MUNROE.

" warded, *on the said first day of August*, in the year " aforesaid, the said letter containing the bank notes " aforesaid, to the town of Petersburgh aforesaid, in " the mail of the U. S. aforesaid, which left the said " city of Washington on the said first day of August, " and which ought to have received and carried the said " letter, and bank notes enclosed therein, to the post- " office in the said town of Petersburg, but *by reason of* " *his negligence and misconduct aforesaid, in his said of-* " *fice on the said first day of August,* the said letter, and " the said bank notes enclosed therein as aforesaid, have " been afterwards utterly, and ever since, lost to the " Plaintiffs."

6. The 6th count was like the 5th, excepting that it averred that the letter with the bank notes enclosed was received at the post-office in Washington, on the 1st of August, " by *Henry Whetcroft*, then and there agent and " clerk of the Defendant, duly authorised to perform " the duties of the said office for the Defendant, to be " re-mailed and sent on," &c. " By virtue of which " premises, *it was* the duty of the said Defendant, post- " master as aforesaid, by himself, his said agent, or " some other person, on the 1st day of August afore- " said, to have distributed, remailed, and sent on the " said letter," &c. " in the mail of the U. S. on the same " 1st day of August, which it was in the power of the " Defendant, *by himself or his said agent and clerk,* to " have done," &c. " *Nevertheless,* the said Defendant, " on the said 1st day of August," " regardless of his " said duty as post-master as aforesaid, *did not by him-* " *self, or his said servant and clerk, or any other person,* " send on and forward, *on the said 1st day of August,* " the said letter," &c. " *But by reason of the negligence* " *and misconduct, aforesaid, in transacting the business of* " *the said office on the said 1st day of August,*" &c. " the " said letter," &c. have been afterwards utterly and ever " since lost to them, the said Plaintiffs," &c.

7. The 7th count was like the 6th, excepting that it averred that the letter, &c. were received at the post-office in Washington, by *William Hewitt*, another agent, servant or clerk of the Defendant.

8. The 8th count charged, that the letter, &c. was

DUNLOP
*v.*
MUNROE.

duly, by the carrier of the mail, placed in the office of the Defendant at Washington, on the 1st of August, 1806, in time to be re-mailed and sent on *by the mail of the same day,* and that it was his duty, by himself or by his agents, or some of them, to have re-mailed and sent it on accordingly by *that mail,* which he did not do, or cause to be done ; but by reason of the negligence and misconduct aforesaid, in his said office, on the said first day of August, the letter, &c. have been afterwards utterly and ever since lost to the Plaintiff.

9. The 9th count was like the 8th, excepting that it averred that the mail which left Washington for Petersburg on the 1st of August, (and which ought to have carried the Plaintiff's letter, arrived safely at Petersburg with all its letters, &c. "but the said *Defendant* "*did unduly, improperly, and negligently delay, detain,* "*and keep the letter aforesaid,* containing," &c. " in his " said post-office *until and after the departure of the mail* "*aforesaid,* which ought, as aforesaid, by the laws and " post-master general's instructions aforesaid, to have " carried and contained the same on the said first day " of August ; and the letter and bank notes aforesaid, " so as aforesaid unduly detained, the said Defendant " did delay, and keep in his said office for a long space " of time, to wit, until the departure of the mail, which " thereafter, to wit, on the 3d day of August next fol- " lowing, left his said office for the town of Petersburgh " aforesaid, but which never did arrive at the post-of- " fice in the said town of Petersburgh, but was, toge- " ther with the letters and packages contained therein, " and with the letter and bank notes aforesaid of the " said Plaintiffs, thus improperly delayed and unduly " forwarded, wholly and entirely lost on its said route " to the town of Petersburgh aforesaid, and before its " arrival at the said post-office in the said town of Pe- " tersburgh ; by reason of which said undue, improper " and unlawful delay and detention, negligence and mis- " conduct of the said Thomas Munroe in his said post- " office, the letter and bank notes contained therein as " aforesaid, have been then, and ever since, utterly lost " to the Plaintiffs."

To these nine counts, there were eighteen pleas in bar.

1. The 1st plea was the general issue of not guilty, pleaded to all the counts.

2. The 2d plea was also pleaded to all the counts, and was, " that the said letter containing," &c. " was " not brought to and delivered, nor in any manner given " in charge at the said post-office at Washington, in the " mail of the United States, which, on the 31st of July, " 1806, left the post-office at Philadelphia, and which, " on the 1st of August next ensuing, arrived at the post- " office in Washington, in manner and form," &c. and of this he puts himself on the country, and the Plaintiffs likewise.

3. The 3d plea was to the 1st, 2d, 3d, and 4th counts, and denied that the letter, &c. was *received by the Defendant,* in manner and form, &c. Upon this plea issue was joined.

4. The 4th plea was to the 1st and 3d counts, and denied that the letter, &c. was fraudulently secreted, withheld and *taken,* by the Defendant, in manner and form," &c. Upon this plea also the Plaintiffs joined issue.

5. The 5th plea was also to the 1st and 3d counts, and averred, that as to the Defendants having *personally* received the said letter, &c. and as to his having *fraudulently secreted, withheld, and taken the same,* &c. he was *not guilty,* and of this he put himself upon the country; and the Plaintiffs likewise. And as to the *residue* of the allegations, charges, and complaints of fraud and misconduct, in the two last mentioned counts of the said declaration above, supposed to have been committed in the said post-office at Washington by some other person employed by the Defendant in the said office, he says that the Plaintiffs, their action aforesaid, to have, &c. ought not, because he says, that at the time when, &c. and always before and ever since, the Defendant, in pursuance of regulations and instructions duly made and issued by the post-master general, *took due precaution and exercised all reasonable care, diligence and circumspection,* to cause all mails, letters and packets brought to the said office, to be duly sent on and forwarded according to the destination of the same, and to prevent all frauds and embezzlements in the said

DUNLOP
v.
MUNROE.

office, *by selecting, appointing, and employing as clerks and assistants in the said office, and to attend in the said office at the regular hours directed by the post-master general, for the purpose of performing the duties of the same,* none but persons of competent skill and knowledge, of fair character, of known good repute for fidelity and honesty, and who, upon being so appointed and employed, and previous to entering upon the duties assigned them as aforesaid, or the execution of their trusts aforesaid, had, in pursuance of the act of Congress in such case made and provided, and in obedience to the express instructions of the post-master general, respectively taken and subscribed, before a magistrate, in due manner and form, the oath prescribed by the said act of Congress, and also the oath, in due manner and form, as directed by the post-master general aforesaid; that is to say, an oath to support the constitution of the United States, and had respectively transmitted to, and caused to be duly filed in the general post-office certificates, in due form, of the said oaths so taken and subscribed as aforesaid. *And the said Defendant in fact says,* that at the time when, &c. and for a long time before and after, *he had with due precaution and circumspection, and with all reasonable care and diligence,* and in pursuance of regulations and instructions duly made and issued by the post-master general of the U. S. *selected and duly appointed and employed, two persons of competent skill and knowledge, of fair character and of known good repute for fidelity and honesty; that is to say, one Henry Whetcroft and one William Hewitt, as clerks and assistants in the said post-office,* and to attend regularly, &c. for the purpose of performing the duties of the said office, and to whom, and to no other person or persons, were, then and there entrusted, by the said Defendant, the duties of receiving and opening the mails brought to the said office for distribution or delivery, and of receiving, distributing, re-mailing, and sending on, according to the proper destination of the same, all mails, letters, &c. there being then and there no other person or persons employed in the said office, to whom the Defendant had entrusted any agency in the duties of the said office, or who were suffered by the Defendant to inspect or handle any letters, newspapers, or other articles constituting a part of any mail brought, &c. they, the said H. W. and W. H. upon being appointed and

employed as aforesaid, and previous to entering upon DUNLOP
the duties, &c. having, in pursuance of the said of act *v.*
of Congress, and in obedience to the instructions and MUNROE.
directions of the post master general aforesaid, respec-
tively and duly taken and subscribed the oaths aforesaid,
and duly transmitted to and caused to be filed in the ge-
neral post-office, certificates, in due form, of the said
oaths respectively so taken and subscribed as aforesaid;
and the said Defendant says, that *if* the said letter, &c.
was in fact delivered and received, or in any manner
given in charge at the said post-office, or was in fact
fraudulently secreted, withheld, and taken by any per-
son employed and entrusted by the Defendant to attend
in the said office, for the purpose of performing the du-
ties of the same, *then such fraudulent embezzlement was
without any participation or connivance whatsoever of the
Defendant, and without any fraud, collusion, or other
misdemeanor in office whatsoever, on the part of the De-
fendant, or by him done or permitted, but altogether with-
out his consent or knowledge, and against his will,* and
this he is ready to verify, &c.

To the latter part of this plea, there was a special
demurrer and joinder. Because, 1. The plea is argu-
mentative in this, that it states that the Defendant has
appointed competent and honest men to do the duties of
the said office, and therefore infers that he himself is
not liable for their negligence; and further, in this, that
he states what acts he did in relation to his office, and
reasons from them in his exculpation. 2. Because the
plea does not confess and avoid, nor deny the allega-
tions of the said counts or of any of them. 3. Because
it does not state the nature and circumstances of error
or mistake supposed to be made by his said clerks and
assistants, so as to show that it did not proceed from a
want of reasonable care and diligence. 4. Because the
plea amounts to the general issue. 5. Because it does
not set forth any matter of law proper for the decision
of the Court, but states facts proper to be given in evi-
dence upon the general issue joined between the parties.
6. Because the plea tends to draw from the considera-
tion of the jury to that of the Court, matters of evi-
dence proper to be shewn only to the jury on the general
issue; and is immaterial, insufficient and informal.

6. The 6th plea was to the said 4th and 9th counts, and denied that the letter was lost by the negligence, carelessness, or misconduct of *the Defendant* in his office—upon which the Plaintiffs joined issue.

7. The 7th plea was to the 1st and 3d counts, and stated that the bank notes mentioned in those two counts were notes of the bank of Virginia, " which was a bank " duly established under a charter from the government " of the state of Virginia, and if the same were in fact " fraudulently taken, withheld and secreted by the De- " fendant, or any person employed and entrusted in the " said post-office at Washington, then, according to the " form of the several statutes in force within the county " of Washington aforesaid, every person so acting and " doing, became guilty of a *felonious embezzlement* of " the same letter and bank notes, and liable to suffer " the pains and penalties of felony, and ought to have " been prosecuted for such crime accordingly ; yet the " Defendant in fact saith, that no criminal prosecution " whatsoever has been commenced, nor any conviction " had against any person or persons whatsoever, in the " said two counts of the said declaration, supposed to " be guilty as aforesaid, and this he is ready to verify," &c.

To this plea there was a general demurrer and joinder.

8. The 8th plea was to the 6th count, and denied that the letter, &c. were received by Henry Whetcroft at the post-office in Washington, in manner and form, &c. upon which issue was joined.

9. The 9th plea was to the 7th count, and denied that the letter was received by William Hewitt at the post-office, &c. in manner and form, &c. upon which issue was also joined.

10. The 10th plea was to the 9th count, and averred that the Defendant did not unduly, improperly, and negligently, delay, detain and keep in the post-office at Washington, nor any where else, the said letter, &c. in manner and form, &c. upon this plea also the Plaintiff's joined issue.

11. The 11th plea was to the 5th, 6th, 7th, and 8th counts, and averred that the loss of the letter, &c. was not caused or produced by reason of the same not having been re-mailed and sent on, at and from the said post-office at Washington, on the same day of the supposed arrival of the said letter and bank notes at the said post-office, to wit, on the 1st day of August, 1806, and by the same mail which, after the said supposed arrival, and on the same day departed from the said post-office at Washington, with letters for the said town of Petersburgh, and by the said letter and bank notes being delayed by the said Thomas in the post-office at Washington, until the departure of the next succeeding mail of the 3d of August, in manner and form, &c. Issue was also joined upon this plea.

12. The 12th plea was to the 9th count, and was precisely like the 11th plea.

13. The 13th plea was to the 2d, 4th, 5th, 6th, 7th, 8th and 9th counts and stated that the Defendant, as to his having received the letter, &c. and having wilfully and negligently omitted to forward and send on the same, in the mail, according to the proper destination of the same; and as to his having unduly kept and detained the same in his office, and as to his having disregarded the duties of his said office, and as to the negligence and misconduct in office imputed to him the Defendant, he is not guilty; and of this he puts himself upon the country, and the Plaintiffs likewise.

And as to the residue of the allegations, charges and complaints of negligence and misconduct in the several counts last aforesaid above supposed to be committed and suffered in the said post-office at Washington, the Defendant (*protesting* that he has in all things demeaned himself, in his said office of post-master, as a good and faithful officer of the United States, and that he has always exercised all practicable care and diligence to have the business and duties of the said office, regularly, duly and faithfully transacted, performed and executed) says that at the time when, &c. he took due precaution, &c. by selecting and appointing proper persons, &c. &c. (as in the 5th plea) and if the said letter, &c. were delivered at his office at Washington, and if the

DUNLOP
*v.*
MUNROE.

DUNLOP
v.
MUNROE.

same were, by reason of any casual negligence, *miscon-duct*, inadvertance, oversight, error or mistake of any person or persons so employed and entrusted in the said office, not in fact duly re-mailed, forwarded and sent on, &c., such the delivery of the said letter, &c. at the said office at Washington was entirely unknown to the Defendant, and every such misconduct, &c. was likewise entirely unknown to the Defendant, and was not caused or produced by any misdemeanor in office of the Defendant, nor willingly or knowingly suffered or permitted by him, but was caused and produced by the casual, inadvertent and unintentional mistake, error and oversight of some person or persons so appointed, &c., and altogether without the consent or knowledge of the Defendant, and against his will. *And so* the Defendant says that he took due precaution and used all reasonable care, diligence and circumspection to cause the said supposed letter, &c. (if ever in fact delivered and given in charge of the said post-office) to be duly sent on and forwarded, &c.; and this he is ready to verify, &c.

To the latter part of this plea, as pleaded to the *5th and 9th counts*, the Plaintiffs, by way of replication, (protesting that the Defendant did not use due care in selecting proper persons, &c.; and that the loss of the letter, &c. did not happen without the knowledge, consent and authority of the Defendant) say, &c. that the letter, &c. regularly arrived at the post-office of the Defendant on the 1st of August, 1806, and were received by him, and ought to have been sent on or caused to have been sent on by him on that day in the mail, &c. which regularly arrived at Petersburgh, and that he did not do so; and did not use due care and diligence in re-mailing and forwarding the same, and did delay and detain the same unduly, negligently and improperly, *whereby* the same have been lost, &c. *without this,* that the loss of the said letter, &c. was caused or produced by any act without the control, knowledge or authority of the Defendant in his office, and which, by using due and reasonable diligence in his said office, he could not have prevented. And this they are ready to verify, &c.

To this replication the Defendant demurred.

To the latter part of the 13th plea, as pleaded to the 2d, 4th, 6th, 7th and 8th counts, the Plaintiffs demurred.

14. The 14th plea was to the same counts, and was the same in substance as the 13th; and the Plaintiffs demurred to it as a plea to the 2d, 4th, 6th, 7th and 8th counts, and replied to it as a plea to the 5th and 9th counts, to which replication the Defendant demurred.

15. The 15th plea was to the same counts as the 13th plea, and was like it, except that it averred that if there was any error or omission, &c. it was without the Defendant's knowledge and consent, and without any *fraud*, or *wilful*, or *gross negligence* of any person by him employed.

To this plea were the same replication and demurrer as to the 13th.

16. The 16th plea was to the 2d, 4th, 5th, 6th, 7th, 8th and 9th counts, and, after *protesting* as in the 13th plea, and admitting that the letter, &c. were not duly remailed and sent on by the mail of the 1st of August as it ought to have been, avers that it was sent on by the next mail, which left Washington on the 3d of August, and after departing from the post-office at Washington, and being entirely without the care and custody of the Defendant, and of every person employed in his post-office, were taken and embezzled by some person or persons as yet undiscovered and unknown, and so lost to the Plaintiffs without any participation, connivance, procurment, consent, or knowledge of the Defendant, or of any person employed or entrusted in his post-office.

To this plea as pleaded to the 2d, 4th, 5th, 6th and 7th counts the Plaintiffs demurred; and as pleaded to the 8th and 9th counts they replied in substance that by reasonable care and diligence the letter, &c. might have been sent on by the mail of the 1st of August, and was not, and that the loss happened thereby; and concluded to the country.

To this replication the Defendant demurred.

DUNLOP
v.
MUNROE.

17. The 17th plea was to the 2d, 4th, 5th, 6th, 7th, 8th and 9th counts, and was like the 16th plea. in all respects, except that it concluded with the following traverse, viz.: " *without this,* that the loss of the said " letter and bank notes aforesaid was caused or pro- " duced by reason of the same not having been re-mail- " ed and sent on, as aforesaid, in the mail of the 1st of " August, as aforesaid, according to the post-master " general's instructions as aforesaid, instead of having " been delayed for the next succeeding mail of the 3d " of the same August as aforesaid, and re-mailed and " sent on in that mail as aforesaid."

On this plea as pleaded to the 9th count, the Plaintiff took issue upon the traverse, and demurred to the plea as pleaded to all the other counts.

18. The 18th plea was to the 5th, 6th, 7th, 8th and 9th counts, and, after protesting, as in the 13th plea, averred, that according to the duly established regulations of the post office, and the instructions of the post-master general in the declaration mentioned, and then in full force, all letters, &c. put into the post-office at Philadelphia directed to Petersburgh, ought to have been put up in a separate and distinct mail, directed to Petersburgh, which mail ought to have been sent on through the several intermediate post-offices, from Philadelphia to Petersburgh, and which, according to the regulations and instructions aforesaid could not have been properly opened either at the post-office in Washington, nor at any other intermediate post-office on the route from Philadelphia to Petersburgh. for any purpose whatever; and no such letters, &c. ought, according to the said regulations and instructions, to have been put up and sent on in any mail, which, according to the direction of the same, and the said regulations and instructions, could have been properly opened at the post-office in Washington to be there distributed and re-mailed previous to being sent on and forwarded to Petersburgh; and that the letter, &c. ought not to have been put up and sent on from the post-office at Philadelphia in any mail to be opened, distributed and re-mailed at the post-office at Washington, but in a separate and distinct mail, directed to Petersburgh, and to be sent on *through* the post-office at Washington.

DUNLOP
v.
MUNROE.

without being there opened, distributed or re-mailed. Whereas the said letter, &c. was not, &c. but together with all the other letters sent by the same post, and directed and destined for Petersburgh, was contrary to the said regulations, &c. sent on from Philadelphia in a mail which, according to the direction of the same, and the said regulations, &c. was to be opened at the post-office in Washington for the purpose of being distributed and re-mailed, &c.; and the Defendant says that if the said letter, &c. had been put up in a distinct and separate mail directed to Petersburgh, it would have been duly sent on in the mail of the first of August, and so the delay was occasioned by the erroneous and irregular manner in which the letter was put up and sent on from Philadelphia, and not by the negligence, carelessness or misconduct of the Defendant in his office: "*without this* that the said letter was put and forwarded in the mail at and from Philadelphia, and delivered at the said post-office in Washington in any other manner than as aforesaid, and this he is ready to verify," &c.

To this plea, *as pleaded to the 5th count,* the Plaintiffs demurred; and *as pleaded to the other counts,* they replied, and (after protesting that the post-master at Philadelphia was not bound to send on the letter in a separate mail directed to Petersburgh, &c. and protesting that the loss of the letter or the delay, &c. was not occasioned by the supposed erroneous manner in which it was put up and sent on from Philadelphia) for replication said, that the letter, &c. was put up and forwarded by the post-master at Philadelphia, according to the said instructions of the post-master general, in a mail addressed "*Southern,*" containing the letters addressed to places in Virginia, and was thereafter duly and regularly placed in the post-office in Washington on the 1st of August to be re-mailed and sent on in the mail of that day, and that the delay and loss were not occasioned by any error or irregularity in the manner in which it was put up and sent on from Philadelphia, but was occasioned by the want of due and reasonable care and diligence in the performance of the duties of the post-office at Washington on the first of August; and concluded to the country.

DUNLOP
v.
MUNROE.

To this replication the Defendant demurred.

All the demurrers were decided by the Court below in favor of the Plaintiffs.

Upon the trial of the issues of fact the Plaintiffs took seven bills of exception.

1. The first bill of exception stated that the Plaintiffs offered evidence to the jury that the Defendant was deputy post-master at the city of Washington from the 1st of January, 1806, until the time of trial, and had under his management and direction the affairs and business of the post-office at that place; and the Plaintiffs produced and read to the jury the printed instructions of the post-master general of the United States: and proved by a witness that those were the instructions delivered to the Defendant for his government in the duties of his office as deputy post-master in the city of Washington. The Plaintiffs further produced to the jury evidence that they had $2,000 in bank notes in the hands of Walker and Kennedy, merchants at Philadelphia, and that that sum of money, in bank notes, was enclosed in a sealed letter and directed to the Plaintiffs, at Petersburgh in Virginia, the place of their residence, and put into the post-office at Philadelphia, and was by the post-master at that place forwarded in the mail addressed to the *state of Virginia* on the 31st of July, 1806. That it arrived *in due course of post* at the post-office in the city of Washington under the care and management of the Defendant. That it was the duty of the office at Washington, as a distributing office, to open the said mail so addressed, and to forward to Petersburgh in Virginia the said letter according to its address. That the said letter was lost and never arrived at the post-office in Petersburgh nor came to the hands of the Plaintiffs, and that the same was demanded of the Defendant, who denied he was liable for it. It was admitted that the course of conveying the mail from Philadelphia to Petersburgh is as follows: the Virginia mail, tied with a string and wrapt in papers, is, with many other mails similarly secured, enclosed in a locked portmanteau, and sent by stage to the city of Washington, distant 144 miles. No person or post-office between Philadelphia and Washington is legally autho-

rized to open the mail addressed to Virginia; but the portmanteau is unlocked and opened at the Baltimore post-office, and the various mails are there taken out of the portmanteau, in order to select the Baltimore mail. When the mail arrives at the post-office in Washington the mail addressed to Virginia is opened in said office as a distributing office, and the letters addressed to Petersburgh assorted, tied and wrapped as aforesaid, and put into a mail addressed to the post-office at Petersburgh. The said Petersburgh mail so tied and wrapped is, with many other mails, put into the portmanteau, which is locked and opened on the route only at Fredericksburgh and Richmond. But the said Petersburgh mail, wrapped in paper and tied with a string as aforesaid, though it may properly be taken out of the portmanteau with the other mails at Fredericksburgh and Richmond as aforesaid, cannot be legally opened at any office between Washington and Petersburgh. *Whereupon* the Plaintiffs' counsel prayed the Court to instruct the jury, that if they should find the above facts to be true the Plaintiffs were entitled to recover in this case on their 2d count, unless the Defendant should prove the said letter *to have been forwarded from his office in the time* and manner prescribed by law *and the said instructions* of the post-master general; which opinion the Court refused to give.

DUNLOP
*v.*
MUNROE.

2. The 2d bill of exceptions stated the same facts, and that thereupon the Plaintiffs' counsel prayed the Court to instruct the jury that if they should find those facts to be true, then the Plaintiffs were entitled to recover in this case upon their 4th and 5th counts, unless the Plaintiff should prove the said letter to have been forwarded from his office *in reasonable time,* and in the manner prescribed by law and the instructions of the post-master general; which instruction the Court refused to give.

3. The 3d bill of exception stated, that, in addition to the above facts, the Plaintiffs offered evidence, under the issues joined on the 6th and 10th pleas, to prove that the letter and bank notes were lost by the negligence and carelessness of Henry Whetcroft and William Hewitt sworn clerks and assistants employed by the Defendant in his said post-office; and also certain acts

DUNLOP
v
MUNROE.

of omission, undue delay and detention of the said letter, and bank notes by such clerks and assistants of the Defendant; to the competency of which evidence to support the issues joined on the 6th and 10th pleas on the part of Plaintiffs, the Defendant objected; and the Court was of opinion that under those issues such evidence was incompetent, and refused to suffer the same to be given to the jury under those issues; and instructed the jury that the Defendant was not liable *under those issues* for any acts or omissions of his said clerks and assistants: to which refusal and opinion the Plaintiffs excepted.

4. The 4th bill of exceptions stated that the Plaintiffs offered evidence of the facts stated in their 5th and 8th counts, and moved the Court to instruct the jury that if they should believe from the evidence that the letter and bank notes were duly delivered into the Defendant's post-office, then it was incumbent on the Defendant to prove that the same were duly forwarded. And if the jury should further believe that the same were not so forwarded and had become lost, then it was incumbent on the Defendant to prove that the same were not lost by any undue negligence or unreasonable detention of himself or any person employed by him in his office; which instruction the Court refused to give; but instructed them that if the jury should believe from the evidence that the letter and bank notes were duly delivered into the Defendant's office, then it was incumbent on the Defendant to prove that the same were duly forwarded; and if the jury should further believe that the same were so delivered and were not so forwarded, and had become lost *in consequence thereof;* then it was incumbent on the Defendant to prove that the same were not lost by any undue negligence and unreasonable detention of himself or any other person employed by him in his office. To which refusal the Plaintiffs excepted.

5. The 5th bill of exceptions stated, in addition to the facts before stated, that the Plaintiffs offered in evidence a copy of a post-bill from Philadelphia, of the 31st of July, 1806, (shewing that a letter whose postage was one dollar and 20 cents, corresponding with the postage upon the letter in question, was charged in the post bill from Philadelphia to the state of Virginia,)

and offered to prove that the post-bill, of which it was a
copy, was received at the Defendants post-office with
letters in the mail from Philadelphia. And the Defen-
dant offered evidence to prove that it never was the
custom, until after the report of the loss of the letter and
bank notes in question, for the *actual contents of the mails,*
sent to the said office for distribution, to be compared
with the *contents noted in the accompanying post-bills;* ex-
cept that it was customary to examine the column of
*paid letters* in order to see whether as many *paid* letters,
and of the same amount of postage, came on in the mail;
that this was done because the deputy post-master had
to account to the post-master general for all letters
sent on from his office and marked *paid;* whether origi-
nally put into his office, or coming there in mails for
distribution; and according to the *routine* of office, any
deficiency, appearing on the arrival of the mail, in the
amount of postage marked in his post-bill as " *paid,*"
would be chargeable to him; that in no other respect
was any attention paid, or notice taken, whether the
actual contents of the mail, as to any letters not marked
" *paid,*" corresponded, or not, with the *post-bill.* That
if, by accident, any variance between the post-bill and
the actual contents of the mail received for distribution,
was discovered, it would never be noted in the office,
inasmuch as the printed forms, furnished to the Defen-
dant and other deputy post-masters, from the post-mas-
ter general for the account of mails *for distribution,* con-
tained no column for noting letters either over-charged,
or under-charged, or miss-sent, such as are to be found
in the form furnished for account of mails for *delivery,*
and marked No. 1, in the schedule annexed to the in-
structions of 1804.

Whereupon, the Plaintiffs prayed the Court to in-
struct the jury that if they believed from the evidence
that the copy of the post-bill produced was a true copy
of the post-bill sent on from Philadelphia to the Wash-
ington post-office, and that the same was received with
letters in the mail from Philadelphia at the Defendants
office, then the jury *ought* to presume that the letters
accompanying the said post-bill corresponded therewith,
unless the Defendant should prove the contrary; which
instruction the Court refused to give as prayed; but
instructed the jury that *it is competent* for them, from

DUNLOP   those circumstances, so to presume; and to decide up-
  *v.*     on the force of such presumption from all the circum-
MUNROE.   stances proved in the case; to which refusal and in-
          struction the Plaintiffs excepted.

6. The 6th exception was to the refusal of the Court
to suffer a witness to be asked whether the printed gen-
eral instructions from the post-master general given to
the deputy post-masters in 1804, *superseded* those before
given to the post-master in Philadelphia in 1800; both
instructions having been produced and read in evidence
to the jury.

7. The 7th bill of exceptions stated that the Plaintiffs
offered evidence to " *prove the several allegations in the*
" *said declaration;* and further offered in evidence the
" several printed instructions of the post-master gen-
" eral (thereto annexed) and also the depositions (there-
" to annexed and which tended to prove the delivery of
" the letter and bank notes into the post-office at Phila-
" delphia, and their arrival at the post-office in Wash-
" ington.) And the Defendant offered evidence to prove
" that Petersburgh, ever since the 1st of November,
" 1804, was a distributing post-office as established by
" the said instructions; that after the said instructions
" it was the practice of post-offices, (except that of
" Philadelphia) in which letters were deposited for Pe-
" tersburgh, to put the same up in a separate mail ad-
" dressed to Petersbugh, and not in the Virginia state
" mail. That the Philadelphia post-office, since the
" said 1st of August, 1806, and not before, has adopted
" the same practice. That the Virginia state mail above
" mentioned contained the letters directed to the several
" post-offices in Virginia, except Norfolk and Richmond,
" and also the letters directed to the states of Ohio and
" Kentucky; and that before the letters for Petersbugh
" contained in the said mail could be distributed and
" re-mailed, it was necessary to assort and distribute the
" whole contents of the said mail.

" The Plaintiffs then moved the Court to instruct the ju-
" ry, that if they should believe from the evidence, that the
" letter and the bank notes in the declaration mentioned,
" were put, at the post office in Philadelphia, in a bun-
" dle superscribed " *Virginia state mails,*" and that it

'had been, since the year 1800, and was the practice, DUNLOP
" in the said Philadelphia post-office during the months    *v.*
" of July and August, 1806, to send letters for delivery MUNROE.
" at Petersbugh, Virginia, in that manner; and that all ————
" letters in the Virginia state mail, for Petersburgh,
" Virginia, brought to the Defendant's office, had been
" usually re-mailed, distributed, and sent on from the
" post-office kept by the Defendant, to Petersburgh
" aforesaid; and should be further of opinion that the
" said letter, containing the said bank notes, was deli-
" vered in the said bundle superscribed " Virginia state
" mail," on the first day of August, 1806, in the said
" office of the Defendant, and in due time to be re-mailed,
" distributed and sent on by the Dfendant on the first
" day of August, 1806, from his aforesaid office, in a
" bundle addressed to Petersburgh, Virginia, then it was
" the duty of the said Defendant to have re-mailed, dis-
" tributed, and sent on the said letter by the mail which
" left the Washington post-office on the said first day
" of August, 1806; and if they further believe that this
" was not so done, or caused to be done by the said De-
" fendant, that it is incumbent on the Defendant to make
" out a just, reasonable and sufficient excuse for the
" omission." which instruction the Court refused to
give as prayed; and the Plaintiffs excepted.

The act of congress of March 2d, 1799, *Vol. 4, p. 505,*
establishes a general post-office at the seat of govern-
ment of the United States, under the direction of a post-
master general; and enacts that he shall establish post-
offices, and appoint post-masters at all such places as
shall appear to him expedient, on the post-roads that
are or may be established by law. And that he shall
give the post-masters *instructions* relative to their du-
ty; and shall obtain from them their accounts and
vouchers, &c. once in three months &c. That all per-
sons employed in the care of the mail shall take an oath
faithfully to perform the duties required of them, and
abstain from every thing forbidden by the laws in rela-
tion to the establishment of the post-office and post-
roads within the United States. That every post-mas-
ter shall keep an office in which one or more persons
shall attend at such hours as the post-master general
shall direct, for the purpose of performing the duties
thereof, and all letters brought to any post-office half

<div style="float:left">DUNLOP<br>v.<br>MUNROE.</div>

an hour before the time of making up the mail of such office, shall be forwarded therein; except at such post-offices where, in the opinion of the post-master general, it requires more time for making up the mail, and which he shall accordingly prescribe; but this shall in no case exceed one hour.

That if any person employed in any of the departments of the general post-office shall secrete, embezzle, or destroy any letter with which he shall be entrusted, or which shall have come to his possession; and intended to be conveyed by post, containing any bank note, &c. he shall, on conviction, be publicly whipped not exceeding forty stripes, and be imprisoned not exceeding ten years.

That the post-master general be authorized to allow to the post-masters, respectively, such commission on the monies arising from the postages, or shall be adequate to their respective services and expenses; not exceeding, &c.

The instructions of the post-master general, issued in pursuance of this act, to the post-masters in 1804, required that every person employed in a post-office as assistant or clerk should take the oath, and send a certificate thereof to the general post-office. That every post-master *should be responsible "for the care and fideli-"ty of every person so employed."* That "the post-"masters at distributing offices are to distribute and "re-mail all letters and packages before the departure "of the mail, *and on no account delay them a single post."*

The verdict and judgment of the Court below being for the Defendant, the Plaintiffs brought their writ of error.

F. S. KEY and C. LEE, *for the Plaintiffs in error.*

The 3d bill of exceptions brings into view the ques tion, whether the negligence of the Defendant's clerks can be given in evidence to prove an allegation of negligence of the Defendant himself; which necessarily involves the question whether the Defendant is liable for the negligence of his clerks. This bill of excep-

tions arose upon the issues joined on the 6th and 10th DUNLOP
pleas. The 6th plea was, that the letter was not lost v.
by the negligence or misconduct of the *Defendant* in his MUNROE.
office—and the 10th was, that the *Defendant* had not
negligently or improperly delayed or detained the letter
in the office.

The law in respect to the liability of the *post-master
general* is admitted to be the same here as it is stated in
*Ld. le Despencer's* case, (*Cowp.* 754.) to be in England.
But the opinion of lord *Mansfield*, in that case, clearly
shows that the action lies in the present case. In the
case of *Brucker v. Fromont*, 6 *T. R.* 659, it is decided
that a declaration which charges the Defendant with ne-
gligence, is supported by proof of the negligence of his
servant. Where the negligence is in a post-office, it is
scarcely possible, in any case, for a Plaintiff to know
exactly to which of the persons, employed in the office,
the negligence is to be attributed. If, as the Court be-
low decided, the Defendant is liable for the negligence
of his clerks, it seems to be immaterial whether the de-
claration state the neglect to be on the part of the Defen-
dant or of his clerks ; or state it in the alternative. A
collector of the revenue is liable for his deputies, al-
though they are sworn officers. Yet the secretary of
the treasury is not liable for the collectors. So the
marshal is liable for his deputies, who are also sworn
officers, and who give bond for the faithful discharge
of their duty. Why should there be a difference in the
case of a post-master ?

The 4th exception is, that the Court refused to in-
struct the jury, that proof of negligence and loss
raised a presumption that the loss was a consequence
of the negligence, unless the contrary be shown. Or,
in other words, the Court below decided, that proof of
negligence and loss did not throw the burden of proof
on the defendant, to show that the loss was not a con-
sequence of the negligence. To oblige the Plaintiffs to
prove, that the loss was a consequence of that negli-
gence, was to impose upon them an impossibility in the
nature of things.

The 5th exception is to the refusal of the Court to
instruct the jury, that they *ought to infer* that the con-

VOL. VII. 35

DUNLOP tents of the mail from Philadelphia corresponded with
*v.* the post-bill when it was received at the Washington
MUNROE. office, unless the Defendant should prove the con-
trary.

What a jury may *infer* from facts proved, is a ques-
tion of law for the Court to decide. And what a jury
*may* thus infer, they *are bound in law* to infer, unless
the contrary be proved. The Court, therefore, ought
not to have left the matter entirely to the jury, but to
have given the instruction as prayed.

Presumptions are inferences of law. Thus from long
possession, the Court will instruct the jury that they
*ought* to presume a deed. So from evidence of payment
of the last ten years rent, the jury *ought* to presume all
the former rents were paid. So in trover, from evi-
dence of a demand and refusal, the jury *ought* to
presume a conversion. So, if stolen goods are found
in possession of a man, the jury *ought* to presume that
he stole them, unless the contrary be shewn.

The 7th exception raises the question whether the De-
fendant was not bound to re-mail and send on the let-
ter, according to law, and the instructions of the post-
master general, although the mail arrived at his office
in an irregular manner.

Upon this point the 5th section of the post-office law,
(*vol.* 4, *p.* 507,) and the instructions, are decisive.
These instructions being given in conformity with the
law, become part thereof, and are equally binding.

JONES *and* MORSELL, *contra.*

All the questions in this case are resolved into one,
viz. On which side was the burden of proof in certain
stages of the trial. All the exceptions are grounded
upon the idea, that it was only necessary for the Plain-
tiffs to show negligence in the office, and a loss of the
letter, without showing that the loss was a *consequence*
of the negligence.

We admit that the Defendant is liable for any loss
happening by his own negligence—but we deny that he

is liable for that of his clerks. The act of Congress requires that the Defendant should employ clerks, and that they should be sworn, and imposes specific penalties upon each person employed in the office for his own misconduct. They are all public officers, and liable to be charged *ex delictu officii.* The post-master is only bound to use due care and circumspection in selecting proper clerks. He is not like a common carrier, who receives hire in proportion to the risk, and the value of the article. He has only a compensation for his trouble in the office. The liability of a master arises from his supposed assent, arising from the fact that the servant is employed for the benefit of the master. But here the clerk does not act for the post-master, but for the public. The servant must be employed in the business of the master and for his benefit, or the latter will not be liable.

JOHNSON, J. It has never been attempted to assimilate him to a common carrier. He has nothing to do with the carrying of the mail.

JONES. It is decided in England, that the *post-master general* in England is not liable for his deputies. *Lane v. Cotton.* 1 *Ld. Ray.* 647. 1 *Salk.* 17.

The instructions from our post-master general to the post-masters, that they should be liable for their deputies or clerk, &c. only means that they shall be liable in accounting with him officially for the revenue. He could not make them liable to individuals.

In the case of *Rowning v. Goodchild,* 2 *W. Bl.* 906. 3 *Wils.* 443, the principal question was, whether the post-master was bound to send out the letters to the inhabitants ; but a question incidentally arose whether the action, which was brought against the *deputy* post-master, should not have been brought against the post-master *general.* The Court, however, was of opinion, that in all cases, deputies are answerable for their own personal misfeasance, such as detaining the letter in question. And in that case the deputies were made, by act of parliament, *ex necessitate rei,* substantive officers, and their duty pointed out as such.

But if the Defendant was liable for the default of his

DUNLOP
v.
MUNROE.

clerks, yet the declaration ought to have shown, whether the Defendant was called upon to account for his own negligence, or that of his clerks. The case of *Brucker v. Fromont,* 6 *T. R.* 659, was reluctantly decided upon the authority of *Turberville v. Stampe,* Ld. *Ray.* 264, but which does not support the case of *Brucker v. Fromont,* which is evidently against principle; and at all events is confined to the case of master and servant. In the following cases, a discrimination is made in the declaration between the act of the master, and that of his servants. *Turner v. Hawkins,* 1 *Bos. & Pull.* 472. *Ogle v. Barnes,* 8 *T. R.* 188. *Savignac v. Roome,* 6 *T. R.* 125.

Presumptions arising from circumstantial evidence are always to be left to the jury. Such a positive inference as will justify the Court in directing the jury, that they *ought* to make it, can arise only from some solemn act. In the present case there was other evidence, showing that no such inference could be drawn as the Plaintiffs had supposed; and therefore the Court did right to leave the whole to the jury.

The 7th exception required the Court to say, that the Defendant was bound to send on the letter on the 1st of August, or to show a reasonable excuse for not sending it on, although the mail was made up in an irregular manner in Philadelphia. The idea of *reasonable diligence* is excluded—and it supposes the Defendant bound at all events to send the letter on by that mail, or to give a sufficient excuse for not doing so, although he sent it by the next mail, and although the loss was not the consequence of not sending it on the 1st of August.

The Defendant was not bound to show that he sent it on; it would be impossible in the course of the business of the office to prove the sending on of every particular letter. Sworn officers are presumed to have done their duty, until the contrary is proved. 3 *East. Williams v. E. I. Company.*

*March 14th....All the Judges being present,*

JOHNSON, J. delivered the opinion of the Court as follows :

It is necessary to dissipate the cloud of pleading in which this case is enveloped, in order to form a distinct idea of the questions intended to be brought to the view of the Court below.

The object is to charge the post-master with the loss of money sent by mail; and the points, which the exceptions are intended to make, are, how far he is liable for his own act or neglect, how far for the acts or neglect of his assistants, and what evidence shall be sufficient to support the Plaintiff's action.

But unfortunately, as not unfrequently happens in this complex and injudicious mode of conducting a suit, with all the clerical skill displayed by counsel in multiplying their counts and pointing their bills of exceptions, the principal questions are really, at last, not brought to the view of this Court.

On the first and second exception it is unnecessary to make any remark, as they are admitted to apply to counts which the evidence did not support and have been, in fact, abandoned.

The third exception is intended to raise the question how far a post-master is liable for the neglect of his assistants; but, connected with the pleadings, it presents another and a very different question, to wit, whether, when the issue is taken upon the neglect of the post-master himself, it is competent to give in evidence, neglect in the assistant acting under him. Now the distinction between the relation of a post-master to his sworn assistant acting under him, and between master and servant generally, has long been settled; and although the latter relation might sanction the admission of such evidence, we are unanimously of opinion that, if it is intended to charge a post-master for the negligence of his assistants, the pleadings must be made up according to the case; and his liability then will only result from his own neglect in not properly superintending the discharge of their duties in his office.

In the fourth exception, the only difference between the opinion prayed for and that given, is, that the Court require the loss to be a *consequence* of not forwarding

DUNLOP  the letter described in the declaration.   Now, in justice
*v.*  to the correctness of the Plaintiffs' counsel, this Court
MUNROE.  hope that they meant nothing more than what the
————  Court conceded; for, certainly, if the loss was not a
consequence of the state of things made out in the evi-
dence, they were not entitled to recover.

On the fifth exception it is only necessary to remark,
that if the Court below erred at all, it was in conceding
too much to the prayer of the Plaintiff.   An entry on
the post-bill is by no means conclusive evidence of the
transmission of a letter, for, it may still never have
been put into the mail, or may have been stolen in its
passage.

The sixth exception is equally untenable.  The in-
structions of the post-master general spoke for them-
selves.   If the one superseded or rescinded the other,
the evidence was to be sought for by comparing them
together.

And the seventh exception affords the Court an op-
portunity to remark how much more conducive to the
purposes of justice it would be to substitute special
verdicts, and demurrers to evidence, for the tedious and
embarrassing practice of the Court from which this
case comes up.   It is a fact that this bill of exceptions
claims a right of recovery without stating any loss or
damage whatever.   The opinion prayed for was, that
if the jury believed the various facts therein detailed,
then it is incumbent on the Defendant to make out a
just, reasonable and sufficient excuse for omitting to
forward the letter described.   But, unless an individu-
al has sustained some loss or damage by an omission
of that kind, why should the post-master be held to
make out a defence?   Each bill of exceptions must be
considered as presenting a distinct, substantive case;
and it is on the evidence stated in itself alone that the
Court is to decide.   We cannot go beyond it and col-
lect other facts which must have been in the mind of
the party, and the insertion of which in this bill of ex-
ceptions could alone have sanctioned the opinion as
prayed for.

Upon the whole, the judgment below must be af-
firmed.